UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ZENITH ELECTRONICS CORPORATION<br><br>PLAINTIFF<br><br>vs.<br><br>V, INC.; WESTINGHOUSE DIGITAL ELECTRONICS LLC<br><br>DEFENDANTS | Civil Action No. 5:06CV248<br><br>Folsom (Jury) |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT
INFRINGEMENT AND DECLARATORY JUDGMENT**

Plaintiff Zenith Electronics Corporation ("Zenith") alleges as follows:

### THE PARTIES

1.   Plaintiff Zenith is a Delaware corporation with its principal place of business at 2000 Millbrook Drive, Lincolnshire, Illinois 60069.

2.   On information and belief, Defendant V, Inc. ("Vizio") is a California corporation with its place of business at 320A Kalmus Drive, Costa Mesa, California 92626, and doing business in this jurisdiction and elsewhere in Texas and the United States.

3.   On information and belief, Defendant Westinghouse Digital Electronics, LLC ("Westinghouse") is a California corporation with its principal place of business at 12150 Mora Drive, Santa Fe Springs, California 90670, and doing business in this jurisdiction and elsewhere in Texas and the United States.

### JURISDICTION

4.   This Court has subject matter jurisdiction over the First and Second Causes of

Action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because those actions arise under the patent laws of the United States (Title 35 of the United States Code). This Court has supplemental jurisdiction over the Third Cause of Action pursuant to 28 U.S.C. § 1367(a) because it is so related to the other claims in the action that they form part of the same case or controversy.

5. On information and belief, Defendants Vizio and Westinghouse do business in this District and have committed the acts of infringement complained of herein this District and elsewhere. Personal jurisdiction over Defendants is proper in this Court because their contacts with this District are sufficient to render Defendants amenable to personal jurisdiction in this District.

## VENUE

6. Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b)(c) and 1400(b).

## THE ZENITH PATENTS

7. United States Patent No. 5,416,524 ("the '524 patent"), entitled "Digital Television Synchronization System and Method," was issued on May 16, 1995, based on an application filed on June 5, 1992. Zenith is the sole owner of the entire right, title, and interest in the '524 patent.

8. United States Patent No. 5,598,220 ("the '220 patent"), entitled "Digital Signal with Multilevel Symbols and Sync Recognition," was issued on January 28, 1997, based on an application filed on March 2, 1994. Zenith is the sole owner of the entire right, title, and interest in the '220 patent.

9. United States Patent No. 5,619,269 ("the '269 patent"), entitled "Frame Sync Signal for Digital Transmission System," was issued on April 8, 1997, based on an application

filed on June 7, 1995. Zenith is the sole owner of the entire right, title, and interest in the '269 patent.

**10.** United States Patent No. 5,629,958 ("the '958 patent"), entitled "Data Frame Structure and Synchronization System for Digital Television Signal," was issued on May 13, 1997, based on an application filed on July 8, 1994. Zenith is the sole owner of the entire right, title, and interest in the '958 patent.

**11.** United States Patent No. 5,636,251 ("the '251 patent"), entitled "Receiver for a Trellis Coded Digital Television Signal," was issued on June 3, 1997, based on an application filed on January 29, 1996. Zenith is the sole owner of the entire right, title, and interest in the '251 patent.

**12.** United States Patent No. 5,677,911 ("the '911 patent"), entitled "Data Frame Format for a Digital Signal Having Multiple Data Constellations," was issued on October 14, 1997, based on an application filed on April 6, 1995. Zenith is the sole owner of the entire right, title, and interest in the '911 patent.

**13.** United States Patent No. 5,802,107 ("the '107 patent"), entitled "Symbol Rotator," was issued on September 1, 1998, based on an application filed on September 13, 1996. Zenith is the sole owner of the entire right, title, and interest in the '107 patent.

**14.** United States Patent No. Re. 36,992 ("the '992 Reissue"), entitled "VSB HDTV Transmission System with Reduced NTSC Co-Channel Interference," was issued on December 19, 2000, based on a reissue application filed on February 9, 1994. Zenith is the sole owner of the entire right, title, and interest in the '992 Reissue.

**15.** United States Patent No. 5,534,938 ("the '938 patent"), entitled "Digital TV System Using Segment and Field Sync Signals," was issued on July 9, 1996, based on an

application filed on October 17, 1994. Zenith is the sole owner of the entire right, title, and interest in the '938 patent.

16. United States Patent No. 5,602,595 ("the '595 patent"), entitled "ATV/MPEG Sync System," was issued on February 11, 1997, based on an application filed on June 7, 1995. Zenith is the sole owner of the entire right, title, and interest in the '595 patent.

17. United States Patent No. 5,987,070 ("the '070 patent"), entitled "VSB Mode Selection System," was issued on November 16, 1999, based on an application filed on November 17, 1997. Zenith is the sole owner of the entire right, title, and interest in the '070 patent.

18. United States Patent No. 5,111,287 ("the '287 patent"), entitled "TV Signal Transmission Systems and Methods," was issued on May 5, 1992, based on an application filed on March 22, 1991. Zenith is the sole owner of the entire right, title, and interest in the '287 patent.

19. United States Patent No. 5,086,340 ("the '340 patent"), entitled "Co-Channel Interference Reduction System For Digital High Definition Television," was issued on February 4, 1992, based on an application filed on October 19, 1990. Zenith is the sole owner of the entire right, title, and interest in the '340 patent.

### THE DIGITAL TELEVISION STANDARD

20. In early 1987, the Federal Communications Commission ("FCC") initiated a rule making proceeding to consider the technical and public policy issues surrounding the use of advanced television technologies by television broadcast licensees. Later that year, and in order to assist the FCC in gathering and processing necessary information on advanced television technologies, the FCC established the Advisory Committee on Advanced Television Service

("the Advisory Committee").

21. The Advisory Committee was given the broad mandate to advise the FCC on the facts and circumstances regarding advanced television systems for the FCC's consideration of the technical and public policy issues.

22. The Advisory Committee defined what could be considered "advanced television," including high definition television, and accepted proposals from the public on how to implement such a system. After receiving proposals on 23 different systems, the Advisory Committee narrowed the proposals to six and began testing. The testing resulted in four all-digital candidate systems.

23. As the Advisory Committee considered additional rounds of testing for evolutionary technology improvements to the four systems, the system proponents formed a coalition called the "Digital HDTV Grand Alliance," which would combine the best of each proposed system. On May 24, 1993, the Grand Alliance was formed by AT&T, GI, MIT, Philips, Sarnoff, Thomson, and Zenith.

24. Most of the major subsystems of the Grand Alliance system were determined by competitive testing within the Grand Alliance, and overseen by members of the Advisory Committee. Zenith's VSB transmission subsystem was selected by the Grand Alliance as the preferred transmission subsystem.

25. As a result of its oversight authority, the Advisory Committee modified some of the subsystem selections made by the Grand Alliance. There were no modifications to the Grand Alliance-endorsed VSB transmission subsystem.

26. A key organization affiliated with the Advisory Committee was the Advanced Television Test Center ("ATTC") located in Alexandria, VA. Under the auspices of the

Advisory Committee, the ATTC conducted extensive testing of the complete Grand Alliance DTV system (as modified by the Advisory Committee), including the Zenith-developed VSB transmission subsystem. The ATTC found that the Grand Alliance system met or exceeded the requirements of the Advisory Committee.

**27.** In addition to the Grand Alliance, other organizations not directly part of the Advisory Committee were important to its mission and success. One organization that made numerous contributions to the Advisory Committee was the Advanced Television Systems Committee ("ATSC"), a standards body formed in 1982. The ATSC compiled the detailed specifications for the digital television broadcast standard based on the system developed by the Grand Alliance. The ATSC prepared a document entitled the ATSC Digital Television Standard A/53 ("ATSC Standard"), which included the specifications from the Grand Alliance's system.

**28.** The ATSC Standard was adopted by the ATSC on September 16, 1995. On November 28, 1995, the FCC Advisory Committee issued its Final Report, concluding that the ATSC Standard should be adopted as the standard for digital terrestrial television broadcasts in the United States.

**29.** On December 24, 1996, the FCC adopted the major elements of the ATSC Standard, mandating its use for digital terrestrial television broadcasts in the United States.

**30.** The Zenith Patents are related to the ATSC Standard. Zenith has complied with the ATSC's patent policy by disclosing its intention to protect its inventions and offering its inventions at reasonable and non-discriminatory ("RAND") rates. Zenith has contacted and attempted to negotiate a reasonable and non-discriminatory license with the Defendants, but the Defendants have refused to take a license.

## DEFENDANTS' PRODUCTS AT ISSUE

31. On information and belief, Defendants manufacture, market, and/or import high definition televisions and/or set-top-boxes including but not limited to projection televisions, CRT televisions, LCD televisions, and/or plasma televisions ("HDTV Products").

32. On information and belief, Defendants import, place into established distribution channels, use, sell, and/or offer to sell products in the United States (including in this District) that are capable of receiving signals broadcast in compliance with the ATSC Standard.

## FIRST CAUSE OF ACTION

### (INFRINGEMENT OF THE '524, '220, '938, '269, '958, '251, '911, '107, AND '992 REISSUE PATENTS AGAINST DEFENDANT VIZIO)

33. Zenith incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

34. On information and belief, Vizio has directly infringed, contributorily infringed, and/or has induced others to infringe, the '524, '220, '938, '269, '958, '251, '911, '107, and '992 Reissue patents by importing, using, offering to sell, and/or selling within the United States various HDTV Products.

35. On information and belief, Vizio continues to infringe, contributorily infringe, and/or induces others to infringe the '524, '220, '938, '269, '958, '251, '911, '107, and '992 Reissue patents.

36. On information and belief, Vizio's infringement has been willful and with full knowledge of the '524, '220, '938, '269, '958, '251, '911, '107, and '992 Reissue patents.

37. Zenith has been and will continue to be damaged and irreparably harmed by Vizio's infringement, which will continue unless Vizio is enjoined by this Court.

## SECOND CAUSE OF ACTION

(INFRINGEMENT OF THE '524, '220, '938, '269, '958, '251, '911, '107, AND '992 REISSUE PATENTS AGAINST DEFENDANT WESTINGHOUSE)

38. Zenith incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

39. On information and belief, Westinghouse has directly infringed, contributorily infringed, and/or has induced others to infringe, the '524, '220, '938, '269, '958, '251, '911, '107, and '992 Reissue patents by importing, using, offering to sell, and/or selling within the United States various HDTV Products.

40. On information and belief, Westinghouse continues to infringe, contributorily infringe, and/or induces others to infringe the '524, '220, '938, '269, '958, '251, '911, '107, and '992 Reissue patents.

41. On information and belief, Westinghouse's infringement has been willful and with full knowledge of the '524, '220, '938, '269, '958, '251, '911, '107, and '992 Reissue patents.

42. Zenith has been and will continue to be damaged and irreparably harmed by Westinghouse's infringement, which will continue unless Westinghouse is enjoined by this Court.

## THIRD CAUSE OF ACTION

(DECLARATORY JUDGMENT OF SATISFACTION OF REASONABLE AND NONDISCRIMINATORY LICENSING OBLIGATIONS FOR THE '524, '220, '269, '958, '251, '911, '107, '992 REISSUE, '938, '595, '340, '070, AND '287 PATENTS AGAINST ALL DEFENDANTS)

43. Zenith incorporates by reference the allegations set forth in paragraphs 1 through

42 of this Complaint as though set forth in full herein.

**44.** The terms of Zenith's offer to license the Zenith Patents comply with Zenith's obligation to offer a license on RAND terms. By its offer to license, Zenith has fully complied with, and discharged, its obligation to offer a license on RAND terms.

### PRAYER FOR RELIEF

Zenith prays for the following relief:

**1.** A judgment that the Defendants infringe the asserted Zenith Patents.

**2.** A permanent injunction enjoining Defendants from infringing, inducing the infringement, or contributorily infringing asserted Zenith Patents.

**3.** An award of damages according to proof at trial under 35 U.S.C. § 284 together with pre-judgment and post-judgment interest on those damages and any supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting, as needed, and a judgment that the damages so adjudged be trebled pursuant to 35 U.S.C. § 284 in light of Defendants' deliberate and willful infringement.

**4.** A judgment that this is an exceptional case and that Zenith be awarded its attorneys' fees, costs, and expenses incurred in this action pursuant to 35 U.S.C. § 285.

**5.** A judgment declaring that Zenith has discharged its obligation to license the Zenith Patents on reasonable and nondiscriminatory terms.

**6.** Such other relief as the Court deems just and appropriate.

### JURY TRIAL

Zenith respectfully requests a jury trial on all issues triable thereby.

Dated: October 30, 2006

Respectfully submitted,

MERCY CARTER TIDWELL L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503
Telephone:   (903) 794-9419
Facsimile:    (903) 794-1268

_____
W. David Carter, Lead Attorney
Texas Bar No. 03932780

ATTORNEYS FOR PLAINTIFF ZENITH
ELECTRONICS CORPORATION

OF COUNSEL:

Stephen C. Neal
nealsc@cooley.com
Thomas J. Friel, Jr.
tfriel@cooley.com
Ricardo Rodriguez
rr@cooley.com
COOLEY GODWARD LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:   (650) 843-5000
Facsimile:    (650) 857-0663